**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| FRANK BRUNCKHORST CO., LLC | ) | Civil No. 11-1883 CAB (NLS) |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER GRANTING PARTIES' JOINT** |
| v. | ) | **MOTION FOR PROTECTIVE ORDER** |
| | ) | |
| MICHAEL R. IHM, SUNSET DELI | ) | [Doc. No. 21] |
| PROVISIONS, INC., a California | ) | |
| Corporation, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Frank Brunckhorst Co., LLC, ("Brunckhorst") and Defendants Michael R. Ihm and Sunset Deli Provisions, Inc. ("Sunset") have been negotiating the terms of a stipulated protective order that will govern the exchange of confidential information.  While they agree on most of the terms, they disagree on whether in-house counsel for Plaintiff–Mr. Harry Orenstein–will be allowed access to documents produced as "Attorneys' Eyes Only" ("AEO").  On February 12, 2012, the parties filed a Joint Motion for Protective Order, asking the court to resolve the issue.

For good cause shown, the court **GRANTS** the joint motion and **ORDERS** the parties to lodge a proposed Protective Order in compliance with this order.

## Relevant Background

Brunckhorst is the national distributor for Boar's Head Provisions Co., Inc. (individually "Boar's Head", collectively with Brunckhorst, the "Companies"), a leading producer of premium delicatessen products.  Compl. ¶ 9.  Defendant Michael R. Ihm is a former distributor of Boar's Head products

through Brunckhorst.  Here, Brunckhorst alleges that Ihm--during his relationship with Brunckhorst--began dealings with, and ultimately entered into a distributorship with, Brunckhorst's competitor, Dietz & Watson ("D&W").

In the current dispute, Brunckhorst argues Orenstein, its General Counsel, needs access to Defendants' information marked AEO because he plays a critical and irreplaceable role in this litigation. Defendants object, arguing that Orenstein is a competitive decisionmaker for the Companies, and that giving him access to D&W's most highly confidential information would place D&W and Sunset at great risk of inadvertent disclosure to its competitive disadvantage.

### Discussion

When evaluating the risk of inadvertent disclosure of confidential information, the Ninth Circuit employs a balancing test in which (1) the risk of inadvertent disclosure, and (2) the potential harm from inadvertent disclosure is (3) weighed against the prejudice to the other party from denial of access to relevant information.  *See Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992).

### 1.      The Risk of Inadvertent Disclosure Based on Competitive Decisionmaking.

To determine the risk that Orenstein would inadvertently disclose D&W's highly confidential information to the Companies, the Court must examine the factual circumstances of Orenstein's relationship to the Companies.  *See Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992) (citing *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984)).  The key inquiry is whether Orenstein is involved in "competitive decision-making."  A "competitive decision-maker" is "shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor."  *U.S. Steel*, 730 F.2d at 1468 n. 3 (parenthesis in original).  If the in-house counsel is involved in competitive decision-making, "the risk of disclosure may outweigh the need for confidential information."  *Intel Corp. v. Via Technologies, Inc.*, 198 F.R.D. 525, 529 (N.D. Cal. 2000) (citations omitted).  The party attempting to show the need for access to confidential information must show actual prejudice to that party's case and not just increased difficulty in managing the litigation.  *See id.*

11cv1883-CAB(NLS)

Orenstein submitted a declaration describing his duties for the Companies.  He is the sole in-house counsel.  Orenstein Decl. ¶¶ 1-2.  He has no executive or non-legal functions at the Companies.  *Id.*  ¶ 3.  Orenstein is not a manager, officer, director or member of the Companies, and claims to not participate in, or provide advice with respect to, competitive decisionmaking for them.  *Id.*  He does not advise the Companies on pricing or product development/design, unless his legal advice is sought on anti-trust issues, in which case he does not rely on confidential information of third parties.  *Id.*  He is not involved in marketing or sales.  *Id.*  Orenstein's legal function focuses primarily on the areas of dispute resolution, litigation and regulatory and human resources matters, and the retention, management and supervision of outside counsel.  *Id.*  ¶ 4.  His legal advice generally does not relate to what competitors are doing unless, as here, one of the Companies' legal rights has been allegedly violated, and he must develop a strategy for dispute resolution or litigation.  *Id.*  Orenstein has a background as a litigator, and has been intimately involved in the litigation of the present case since its inception.  *Id.*  ¶ 6.  He is expected to continue to play a meaningful role in both the overall development of strategy and the day-to-day aspects of the litigation, and to make recommendations and decisions regarding any proposed settlement of the dispute.  *Id*.  In making any settlement recommendation, he will rely on his "intimate knowledge of the damages to Brunckhorst caused by the injury to reputation, disruption of customer relationships and unfair dealing..." *Id.*  ¶ 7.

Defendants argue that Orenstein's involvement in antitrust cases amounts to competitive decisionmaking, as those issues involve unfair competition.  However,

> Although, by its very nature, [in-house counsel's] role as an antitrust lawyer involves advice and participation in decisions about competition, it does not necessarily implicate his involvement in "competitive decisionmaking"—i.e., "decisions . . . made in light of similar or corresponding information about a competitor."

*ActiveVideo Networks, Inc. v. Verizon Comm's, Inc.*, 274 F.R.D. 576, 580 (E.D. Vir. 2010).  The court, therefore, finds this fact to not weigh in favor of finding Orenstein to be a competitive decisionmaker.

Defendants further argue that due to his active role in this litigation, and because Orenstein advises Brunckhorst on "what competitors are doing," he is a competitive decisionmaker.  *Pl.'s Mem. Ps&As* at 7.  Orenstein said that his "legal advice generally does not relate to what competitors are doing unless, as here, one of the Companies' legal rights have been violated and it is for purposes of

developing strategy for dispute resolution or litigation." Orenstein Decl. ¶ 4. While "courts have held that an attorney who reviews confidential information does not automatically become a competitive decisionmaker because he advises clients on settlement agreements," a moving party can prevail if it can link settlement negotiations to competitive decisionmaking. *Pfizer Inc. v. Apotex Inc.*, 744 F. Supp. 2d 758, 764 (N.D. Ill. 2010). Here, Defendants have not made such a link.

Defendants argue that Orenstein's intimate knowledge of Brunckhorst's damages as alleged in the complaint indicates he has intimate knowledge of Brunckhorst's pricing, competition and product lists, and client lists. In support, Defendants provide an email on "product price changes" that show Orenstein is routinely included in emails relating at least to product pricing. Becker Decl. Ex. B. The email was sent from "Promotions." While the sender of the email may be involved in competitive decisionmaking, "[m]ere correspondence with competitive decisonmakers or attendance at competitive decisionmaking meetings does not itself constitute competitive decisionmaking." *ActiveVideo Networks*, 274 F.R.D. at 581.

Finally, Defendants point out that Orenstein admits the highly confidential information would be stored on his computer within Brunckhorst. From this, Defendants conclude that the risk of inadvertent disclosure is high because Brunckhorst has access to Orenstein's computer and could review his highly confidential files. This argument does not bear on whether Orenstein is a competitive decisionmaker. And in reply, Orenstein states he will not store any physical copies of AEO information, and will shred any copies he prints. Orenstein Decl. ¶ 11.

The Court notes that Orenstein is the sole in-house counsel for the Companies. Orenstein Decl. ¶ 3. In his declaration Orenstein does not address whether, in his capacity as the sole in-house counsel, he (1) attends Board or other business meetings; (2) advises the Companies on distributorship policy and procedure in light of competitors' policies and procedures; (3) advises on the Companies' business models, including but not limited to, distributorship relationships; and (4) advises the Companies on when to enter into, terminate, or enforce distributor relationships in light of what the competitors do.

The court finds that based on the evidence before it, Orenstein is not a competitive decisionmaker concerning the topics addressed in his declaration (i.e. pricing, product development/design, marketing or sales). *See* Orenstein Decl. ¶ 3. The court does not extend that

1   finding, however, as to policies and procedures concerning the Companies' distributors, as there is no

2   factual information addressing his role in Brunckhorst's distributor relationships.  If, for example,

3   Orenstein  is consulted on or involved in decisions concerning distributors, Orenstein may be considered

4   a competitive decisionmaker.

5        Whether or not Orenstein is a competitive decisionmaker, the court must still balance the

6   potential harm to Defendants from inadvertent disclosure and the prejudice to Brunckhorst if it is denied

7   access to the AEO.

8          **2.        The Potential Harm From Inadvertent Disclosure.**

9        The relevant information at issue is Defendants' distributorship contract and communications

10  with D&W surrounding that contract.  Sunset became a D&W distributor on August 1, 2011.  On that

11  date, it was issued a confidential distributor policy, subject to a confidentiality provision and agreement

12  ("Confidential Policy").  Eni Decl. ¶ 12.  The Confidential Policy is the same policy furnished to all

13  D&W distributors, and all D&W distributors (including Sunset) are required to sign a confidentiality

14  agreement agreeing not to disclose either the Confidential Policy or its content.  The Confidential Policy

15  addresses the manner in which distributors interact with retailers, use D&W's logos, engage in point-of-

16  sale marketing, and handle and deliver products.  Eni Decl. ¶ 13.

17       D&W has unique business arrangements with each of its distributors, and no distributor is given

18  access to the arrangement which D&W has with any other distributor.  Eni Decl. ¶ 14.  D&W keeps

19  strictly confidential all such arrangements from both its competitors and its own distributors.

20  Distributors are required to agree to keep confidential the terms of their individual arrangements with

21  D&W.  *Id.*  D&W will suffer severe financial harm and competitive disadvantage if its main competitor

22  was aware of the business arrangements made with other D&W distributors.  Eni Decl. ¶ 15.  If

23  Brunckhorst or any of D&W's other national competitors, or their respective distributors, had access to

24  the Confidential Policy, D&W's strategies for distribution and marketing can and would be used to

25  compete against D&W and to defeat and circumvent such strategies.  Eni Decl. ¶ 18.

26       Brunckhorst disputes that Defendants would be so severely disadvantaged should AEO

27  information be inadvertently disclosed.  Brunckhorst claims that the information sought could not be

28  used for anything beyond uncovering the events surrounding the formation of the contract between

1    D&W and Defendants.  It contends that Brunckhorst's success turns on the quality and price of their

2    products and their customer service, so that there is "no reason to believe that any such information

3    could be misused by Brunckhorst to improve the quality of Boar's Head Products or reduce the cost of

4    raw materials and thereby gain a competitive edge over Defendants."  *Pl.'s Mem. Ps&As*, p. 7.

5         This Court finds there to be a risk of harm resulting from the inadvertent disclosure of the

6    confidential information addressed in Louis Eni's declaration, because the Confidential Policy at issue

7    concerns trade secret information.[1]  If inadvertently disclosed, the harm could extend to at least D&W's

8    distributor relationships, pricing, and marketing.  Contrary to Brunckhorst's assertions, the information

9    could be used for much more than just the events surrounding the formation of the contract.

10        **3.      The Prejudice to Plaintiff Should Orenstein Be Denied Access To AEO Information.**

11        To establish sufficient prejudice to allow in-house counsel access to confidential information, the

12   protective order must actually prejudice presentation of the moving party's case, not merely increase the

13   difficulty of managing the litigation.  *See Brown Bag*, 960 F.2d at 1472.  In *Brown Bag*, a party's

14   contention that in-house counsel needed access to confidential information to manage the case was held

15   to be insufficient to overcome the risk of inadvertent disclosure, even where outside counsel had

16   withdrawn from the litigation.  *See id.* at 1471.

17        Where, because of the technical nature of a case, the specialized knowledge of in-house counsel

18   was necessary to supervise the litigation, good cause was found to outweigh the risk of inadvertent

19   disclosure and permit access of in-house counsel to confidential information.  *See Carpenter Tech.*

20   *Corp. v. Armco, Inc.*, 132 F.R.D. 24, 28 (E.D. Penn. 1990).  Courts have also found good cause where

21   other extenuating circumstances exist that would cause hardship to a party.  *See U.S. Steel Corp.* 730

22   F.2d at 1468 (permitting in-house counsel access to confidential information where the party seeking

23   disclosure had no outside counsel, the litigation was "extremely complex and at an advanced stage," and

24   both parties agreed that in-house counsel was not involved in competitive decisionmaking).

25

26        [1]The  Uniform Trade Secrets Act defines a "trade secret" as: "information, including a formula,
     pattern, compilation, program, device, method, technique, or process, that: (1) Derives independent
27   economic value, actual or potential, from not being generally known to the public or to other persons
     who can obtain economic value from its disclosure or use; and (2) Is the subject of efforts that are
28   reasonable under the circumstances to maintain its secrecy."  Cal. Civ.Code § 3426.1(d)); *see I-Flow*
     *Corp. v. Apex Med. Techs., Inc.*, 87 U.S.P.Q.2D (BNA) 1470 (2008).

1    Brunckhorst argues it will be prejudiced if Orenstein is denied access to AEO information.

2    Orenstein has a background as a litigator and plays a key role in this litigation.  Orenstein Decl. ¶¶ 5-6.

3    He assisted outside counsel in drafting the Complaint, the Early Neutral Evaluation ("ENE") Statement,

4    the Rule 26 Initial Disclosures and Plaintiff's discovery requests.  Orenstein Decl. ¶ 5.  He attended the

5    ENE Conference on November 10, 2011, and participated in the telephonic status conference with the

6    court on December 16, 2011.  *Id.*  Brunkhorst expects Orenstein, as General Counsel, to continue to play

7    a meaningful role in both the development of overall strategy and day-to-day aspects of this litigation,

8    and to make recommendations and decisions regarding any proposed settlement.  Orenstein says he

9    would be severely hindered from doing so if he was not able to evaluate, or discuss AEO information,

10   with outside counsel.  Orenstein Decl. ¶ 6.

11   Orenstein states it would be "particularly difficult to calculate Brunckhorst's damages and assist

12   outside counsel in responding to discovery requests with respect thereto if [he] were foreclosed from

13   considering [AEO] information . . . ."  *Id.* ¶ 7.  Orenstein further says that Brunckhorst would be

14   prejudiced if he were precluded from playing a meaningful role in this litigation by not having access to

15   AEO information as it would (1) increase the cost of the litigation because Brunckhorst would have to

16   rely on outside counsel to perform functions he could perform more efficiently due to his intimate

17   knowledge of the Companies; and (2) delay the resolution of the case by hindering his ability to make

18   informed decisions and provided direction to outside counsel.  *Id.* ¶ 9.  Further, Plaintiff argues that

19   settlement is unlikely should Orenstein be barred from viewing AEO information, because Brunckhorst

20   relies on Orenstein to make settlement recommendations, and outside counsel do not have settlement

21   authority in the case.  *Pl.'s Mem. Ps&As*, p. 10; Orenstein Decl. ¶ 8.

22   Defendants argue that restricting in-house counsel access to AEO information would still enable

23   Brunckhorst's outside counsel to utilize such information.  *Def.'s Mem. Ps&As*, p. 9.  They contend that

24   Brunckhorst would merely be inconvenienced by having to rely more on outside counsel.  *Id.* at p. 8.

25   Orenstein's stated need for access to D&W's Confidential Policy fails to establish the good

26   cause required by *Brown Bag*, *Carpenter*, and *U.S. Steel*.  Brunckhorst does not allege that its ability to

27   litigate through outside counsel will be impaired, beyond taking more time.  *See U.S. Steel*, 730 F.2d at

28   1468; *see also Carpenter*, 132 F.R.D. at 28.  In *Brown Bag*, no prejudice was found where outside

counsel had sufficient time and resources to review confidential materials and was presumably competent to evaluate the information. *See Brown Bag*, 960 F.2d at 1471. Brunckhorst has competent outside counsel already working on this case, and will have sufficient time to review the confidential materials. Further, this case does not involve highly technical determinations that require Orenstein's expertise in any way. Finally, in regards to settlement, Orenstein will still be able to confer with outside counsel in order to make settlement recommendations to Brunckhorst. The fact that outside counsel do not have settlement authority does not mean that no settlement is possible. Thus, the court finds that Plaintiff would not be greatly prejudiced should Orenstein be denied access to Defendants' AEO information concerning D&W's Confidential Policy. Further, if Orenstein asserts that he is not at all involved in advice or decisions concerning the Companies' policies and procedures with distributors, then he will be on equal footing with outside counsel in this area, and knowing D&W's Confidential Policy will not affect his ability to evaluate the case and make a settlement recommendation for the Companies.

In weighing the risk of inadvertent disclosure and resulting potential harm against the prejudice to Brunckhorst, the Court finds that there is no potential prejudice to Brunckhorst if Orenstein is barred from viewing AEO information concerning D&W's Confidential Policy.

However, as discovery progresses, should Brunckhorst later want to try to show prejudice by Orenstein's lack of ability to view D&W's Confidential Policy, the parties may file a joint motion based on a formal, propounded discovery request. Any such motion must include a declaration from Orenstein regarding the topics the court found lacking in his current declaration, and must address all other objections from Defendants, including the discovery request's relevance to the claims in this lawsuit.

## **Conclusion and Order.**

The court finds that Defendants have a real concern that their AEO information concerning D&W's Confidential Policy will be put at risk of inadvertent disclosure should Brunckhorst's in-house counsel, Harry Orenstein, be given access to that information. Moreover, Brunckhorst has shown no prejudice should Orenstein be denied access to the AEO information.

///

///

The parties shall make the appropriate revisions to the proposed protective order reflecting this requirement.  The parties shall lodge that revised protective order with Judge Stormes by **March 8, 2012**.

**IT IS SO ORDERED.**

DATED:  March 2, 2012

Hon. Nita L. Stormes
U.S. Magistrate Judge
United States District Court

9