Matthew A. Becker, Esq., (SB# 190748)
Karen M. Hawkes, Esq., (SB# 236847)
**THE LAW OFFICE OF MATTHEW A. BECKER, PC**
1003 Isabella Avenue
Coronado, California 92118
Telephone: (619) 522-6760
Facsimile: (619) 522-6763

Attorneys for Defendants
Sunset Deli Provisions, Inc., Michael Ihm
and South Shore Deli Provisions, Inc.

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FRANK BRUNCKHORST CO., LLC, a New York limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL R. IHM, SUNSET DELI PROVISIONS, INC., a California corporation, and SOUTH SHORE DELI PROVISIONS, INC., a California corporation,<br><br>Defendants. | Case No.: 11-CV-1883- CAB-(KSC)<br><br>**DEFENDANTS' POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE DEFENDANTS' ANSWER AND ENTER THEIR DEFAULT AND FOR CONTEMPT AND COSTS AND ATTORNEYS' FEES**<br><br>Date: February 15, 2013<br><br>Time: 3:00 p.m.<br><br>Ctrm: 2<br><br>Judge: Hon. Cathy A. Bencivengo |

///

///

///

///

///

///

///

# TABLE OF CONTENTS


| | | | | Page No.: |
|---|---|---|---|---|
| I. | INTRODUCTION | | | 1 |
| II. | BACKGROUND FACTS | | | 1 |
| III. | PLAINTIFF'S ALLEGATIONS REGARDING DISCOVERY | | | 2 |
| | A. | Defendants Provided Truthful and Complete Responses to Plaintiff's Interrogatories. | | 3 |
| | | 1. | Interrogatory 2. | 3 |
| | | 2. | Interrogatory 3. | 4 |
| | | 3. | Interrogatory 4. | 5 |
| | B. | Defendants Never Withheld Documentary Evidence and Made An Honest and Complete Production. | | 6 |
| | | 1. | Document Requests 1, and 2. | 6 |
| | | 2. | Document Request 3, 4, 5 and 6. | 7 |
| | C. | Defendant Ihm Provided Truthful Testimony At His Deposition. | | 8 |
| IV. | LEGAL ARGUMENT | | | 9 |
| | A. | Legal Standard For Sanctions. | | 9 |
| | B. | The Court Should Refuse To Impose The Harsh and Extreme Sanctions of Striking Defendants' Answer and Entering Default Judgment Because The Factors Weigh Heavily In Favor of Defendants. | | 11 |
| | | 1. | The Public's Interest In Expeditious Resolution of Litigation and The Court's Need To Manage Its Dockets. | 11 |
| | | 2. | Plaintiff Has Not Suffered Any Prejudice Supporting This Drastic Sanction. | 12 |

**TABLE OF CONTENTS *(Continued)***


3. **Public Policy Favors The Disposition of This Case On Its Merits.** 13

4. **The Court Should Refuse To Impose Such Drastic Sanctions Against Defendants Because Defendants Have Never Been Warned That Such A Drastic Sanction Could Be Entered.** 15

C. **The Court Should Refuse To Impose Monetary Sanctions Against Defendants.** 17

V. **CONCLUSION** 18

# TABLE OF AUTHORITIES


**Cases** **Page No.:**

*Anheuser Busch v. Natural Beverage Distributors,* ................................................ **13**
59 F.3d 337 (9th Cir. 1995)

*Brockton Sav. Bank v. Peat,* ................................................................................ **16**
771 F.2d (1st Cir. 1985)

*Combs v. Rockwell,* ............................................................................................ **15, 16**
927 F.2d 486 (9th Cir. 1991)

*Computer Task Group, Inc. v. Brotby,* ................................................................ **10, 15-17**
364 F.3d 1112, 1116 (9th Cir. 2004)

*Dreith v. Nu Image, Inc.,* ..................................................................................... **10**
648 F.3d 779, 788 (9th Cir. 2011)

*Ehrenhaus v. Reynolds,* ....................................................................................... **10, 15**
965 F.2d 916, 920 (10th Cir. 1992)

*Gemisys Corp. v. Phoenix American, Inc.,* .......................................................... **10, 12-13**
186 F.R.D. 551, 556 (N.D. Cal. 1999)

*Henry v. Gill Indus.,* ............................................................................................ **10**
983 F.2d 943, 946 (9th Cir. 1993)

*Hester v. Vision Airlines, Inc.,* ............................................................................ **9, 14**
687 F.3d 1162, 1169 (9th Cir. 2012)

*In re Exxon Valdez,* ............................................................................................. **10**
102 F.3d 429, 432 (9th Cir. 1996)

*Kopitar v. Nationwide Mutual Ins. Co.,* ............................................................... **14**
266 FRD 193 (E.D. Cal. 2010)

*Leon v. IDX Sys. Corp.,* ...................................................................................... **10**
464 F.3d 951, 958 (9th Cir. Wash. 2006)

## TABLE OF AUTHORITIES (*Continued*)

**Cases** **Page No.:**

*Meade v. Grubbs,* ........ **10**
841 F.2d 1512, 1520 (10th Cir. 1988)

*Sorokin v. Sheriff's Dept.,* ........ **10, 12**
2011 U.S. Dist. Lexis 37293 (S.D. Cal. 2011)

*Stars' Desert Inn Hotel & Country Club v. Hwang,* ........ **10, 15-17**
105 F.3d 521, 525 (9th Cir. 1996)

*Sun World, Inc. v. Olivarria,* ........ **16**
144 FRD 384 (E.D. Cal. 1992)

*Televideo Systems, Inc. v. Heidenthal,* ........ **17**
826 F.2d 915 (9th Cir. 1987)

*United States ex rel. Wiltec Guam, Inc. v. Kahaluu Constr. Co.,* ........ **10, 15**
857 F.2d 600, 604 (9th Cir. 1988)

*Wanderer v. Johnston,* ........ **10**
910 F.2d 652, 656 (9th Cir. 1990)

*Wm. T. Thompson Co. v. General Nutrition Corporation,* ........ **16**
593 F.Supp. 1443 (C.D. Cal. 1984)

**TABLE OF AUTHORITIES *(Continued)***

| Statutes | Page No.: |
|---|---|
| Fed. Rule Civ. Proc. § 37(b)(2) | **9** |
| Fed. Rule Civil Proc. 37(b)(C) | **17** |

Defendants, Sunset Deli Provisions, Inc., a California corporation, Michael R. Ihm, and South Shore Deli Provisions, Inc., a California Corporation, (hereinafter "Defendants"), submit the following Points and Authorities in Opposition to Plaintiff's Motion to Strike Defendants' Answer and Enter Their Default and for Contempt and Costs and Attorneys' Fees.

## I. INTRODUCTION.

Plaintiff's motion is nothing more than a deliberate tactic to misstate, misconstrue, muddy the water and exploit the discovery process, in an attempt to confuse the Court into rendering judgment without a proper trial on the merits. The fact is that Plaintiff's case is starting to unravel as the facts and evidence prove that the Parties operated under an at will contract. As a result, Plaintiff has resorted to form over substance arguments in an effort to save its case. Indeed, Plaintiff has at all times engaged in extreme bullying tactics aimed at halting fair competition and seeking to punish Defendants for fairly distributing for Plaintiff's main competitor in the marketplace. Plaintiff has never played fair and this motion is just another example. Plaintiff's acts have already needlessly wasted the resources of Defendants and the Court.

## II. BACKGROUND FACTS.

Plaintiff brought its complaint against Defendants in retaliation of Defendants ceasing their "at will" distributorship with Plaintiff. The Defendants were previously an authorized distributor of Plaintiff's Boar's Head products from 1997 - 2011. The Plaintiff only grants "at will" distributorships. At all times, the parties did not operate under any written agreement. During the course of the relationship, Plaintiff exercised tight control over the distributorship, often requiring Defendants to comply with extensive marketing and operational requirements at Defendants' expense. Because there was no written contract, the choice for any Boar's Head distributor is to comply or have distribution rights terminated.

When Defendants began operating their distributorship, Plaintiff's Boar's Head products were not widely known or sold in San Diego County. During the next years, Defendants created a significantly large market for such products through diligence and relationship building with

customers. Plaintiff, on the other hand, is well known for breaking up territories, playing distributors off one another and/or terminating distributorships without notice. In fact, various former distributors have unsuccessfully filed lawsuits against the Plaintiff - the lack of written agreement has always insulated the Plaintiff from liability.

In the spring of 2011, Defendants became aware that Plaintiff intended to take over at least a portion of Defendants' distributorship and offer it to a third party. Plaintiff also began operating erratically, making extreme demands and refusing to approve new customers brought in by Plaintiff. In order to protect the business, Defendants provided proper notice to Plaintiff that they would be ceasing their distributorship.

Shortly thereafter, South Shore Deli Provisions, Inc., (hereinafter "South Shore") an entity owned by Defendant Michael Ihm, obtained distribution rights from a competing brand, Dietz and Watson, Inc., (hereinafter "D&W"). Defendants believe Plaintiff filed the present action out of spite and to obtain D&W's trade secrets.

## III. PLAINTIFF'S ALLEGATIONS REGARDING DISCOVERY.

In Plaintiff's drawn out, convoluted and oft confusing motion, Plaintiff intentionally misstates, omits and twists the facts in a forced effort to taint the Court and Defendants. The facts are that at all times throughout this litigation, Defendants have acted diligently and honestly in complying with the discovery process and the Court's orders. Plaintiff, however, has obstructed the process at every turn through its big firm bullying tactics, army of attorneys and baseless attacks on the Defendants. Throughout the litigation, Plaintiff's attorneys have engaged in hostile, harassing behavior in an effort to distract Defendants from their business.

There can be no doubt as to what this case is truly about, namely, Plaintiff's unrelenting determination to discover the confidential, proprietary, and trade secret information of Dietz & Watson, ("D&W"), Plaintiff's primary competitor in the marketplace, and its personal anger towards Defendants for deciding to distribute for D&W. Indeed, Plaintiff's primary motivation is to halt fair competition and destroy Defendants in the process.

In Plaintiff's points and authorities and incorporated declaration of Michael L. Kirby,

Plaintiff muddles its analysis of Defendants' discovery responses going back and forth between interrogatories, document requests and deposition testimony in a disorganized and deconstructive manner. Notwithstanding this, Defendants respond as outlined below.

**A. Defendants Provided Truthful and Complete Responses to Plaintiff's Interrogatories.**

In its motion, Plaintiff argues that Defendants provided false responses to its interrogatory requests. Plaintiff specifically references interrogatories 2, 3 and 4, which all request information relating to D&W. As set forth herein, Plaintiff's contention is meritless.

**1. Interrogatory 2.**

Plaintiff's interrogatory 2 seeks the identification of "all written contracts, agreements, letters of intent, memoranda, policies, manuals or other documents governing or setting forth the terms of Defendants' business relationship with D&W."

Plaintiff argues that Ihm's response identifying only the Confidential D&W Independent Distributor Policies ("Confidential Policy") was false because additional related documents produced by D&W identified the non-disclosure agreement, memorandum of understanding, compensation agreement and closing certificate. Plaintiff intentionally misconstrues Ihm's response. The Confidential Policy as identified by Ihm is not exclusive to just one document. All of the documents mentioned were related and were part of and annexed to the overall agreement between Defendants and D&W. Defendant Ihm is not an attorney and to Ihm, they were all part of one agreement, the Confidential Policy. Ihm never intended to omit any portion of the agreement and Plaintiff's conclusion that Ihm falsely omitted the identification of the documents is ludicrous.

Plaintiff further argues that Ihm falsely testified as to the date that he entered into the compensation agreement. See Declaration of Michael L. Kirby ("Kirby Decl.") ¶ 79. Plaintiff's contention is not correct. The Confidentiality Policy was in fact signed on August 1, 2011 and Defendant Ihm's testimony was correct.

///

**2. Interrogatory 3.**

Plaintiff's interrogatory 3 seeks the identification of "Ihm's communications with D&W between August 1, 2008 and August 1, 2011." In its motion, Plaintiff spends an exhaustive amount of time analyzing Ihm's original response to this interrogatory to conclude that Ihm provided false responses, and virtually overlooks the fact that Ihm served an amended response addressing this interrogatory in which Ihm identifies at least thirteen (13) communications with D&W. It is quite notable that all of these communications were in person or by telephone as Ihm has accurately testified to numerous times. See Declaration of Ihm, Doc. No. 38. In its motion, Plaintiff states, without reason or analysis, that "Defendant misrepresented the nature and circumstances of [these] communications..." Plaintiff's P&A, page 11, lines 16-18. This is nonsensical.

It is important to note that the nature of Ihm's business requires Ihm to be outside of an office setting. Ihm is often on the road is not consistently linked to a computer or printer and does not maintain a database of emails from his cell phone. Further, Defendants' do not maintain a typical office setting. See Ihm Decl. ¶ 2. Defendants have some office space but the majority of business operates out of the warehouse and cooler area. See Ihm Decl. ¶ 2. The facility houses a reception area, a salesperson office, an open area where the office assistant sits and maintains the **only** computer with internet access, and a conference room. See Ihm Decl. ¶ 2. This computer is shared among employees, but it is mainly used by the office assistant. See Ihm Decl. ¶ 2. The reception area has a computer on the desk but this computer is not set up for internet access. See Ihm Decl. ¶ 2. It is used strictly to process orders and communicate with the computers in the cooler weigh station. See Ihm Decl. ¶ 2. Defendants do not have computers in each office or at each desk. See Ihm Decl. ¶ 2. The salespersons have computer "hand held" devices to process orders in the field. See Ihm Decl. ¶ 2. While these devices use wireless technology to send order information via a telephone line, they do not have the capability to access the internet or to send or receive email. See Ihm Decl. ¶ 2. The company does not maintain a central network. See Ihm Decl. ¶ 2. Defendant Ihm spends that majority of his time

outside the office. See Ihm Decl. ¶ 2. Even when he is present in the office he does not spend time at the computer, he spends time working in the warehouse and cooler area. See Ihm Decl. ¶ 2.

Due to the small size and non-traditional type of office maintained by Defendants, Defendant have never had a policy to save any documents other then documents pertaining to insurance, delivery truck information and invoices. See Ihm Decl. ¶ 3. Defendants do not maintain a paper flow and do not use interoffice memoranda. See Ihm Decl. ¶ 3. Defendant Ihm communicates with his staff telephonically or through in person communications. See Ihm Decl. ¶ 3. Further, Defendants have never saved or maintained email files on the computer. See Ihm Decl. ¶ 3. Defendant Ihm only started to use a smart phone in late 2010. See Ihm Decl. ¶ 3. Defendants employees only received smart phones after August 1, 2011. See Ihm Decl. ¶ 3. Defendants very rarely email customers except for the few that are out of state. See Ihm Decl. ¶ 3. Defendants do not have a company domain or company email addresses for employees. See Ihm Decl. ¶ 3.

The communications identified by Defendant Ihm were both honest and accurate based upon the knowledge he had. Once again, Defendant Ihm never acted intentionally or willfully withheld information regarding such communications from Plaintiff. Defendant Ihm identified emails that D&W did not produce and vice versa. There was no coordinated attempt to hide information.

**3. <u>Interrogatory 4.</u>**

Plaintiff's interrogatory 4 seeks the identification of "Ihm's communications with current or former distributors of BH products including without limitation, Eugene Orsi." Plaintiff argues that Defendant Ihm provided false information by not identifying email communications between himself and Mr. Orsi, because D&W was able to locate and produce various emails between Ihm and Orsi. Plaintiff's contention is without merit. Defendant Ihm simply did not keep a record of email communications with Mr. Orsi, who at the time was a distributor of Plaintiff. There was no intentional, willful or bad faith refusal to provide information.

Defendant Ihm simply did not have it. The fact that D&W later produced such emails is not conclusive evidence that Defendant Ihm provided false information by not being able to identify them. Defendant Ihm acted diligently in his search for information responsive to Plaintiff's request but was unable to locate any emails. Again, Defendant Ihm and D&W identified and produced different emails.

**B. Defendants Never Withheld Documentary Evidence and Made An Honest and Complete Production.**

In its motion, Plaintiff argues that Defendants provided false responses to its interrogatory requests. Plaintiff specifically references interrogatories 2, 3 and 4, which all request information relating to D&W. As set forth herein, Plaintiff's contention is meritless.

**1. Document Requests 1, and 2.**

In its motion, Plaintiff lumps these requests together concluding that Defendant Ihm had responsive documents in his possession that he refused to produce. This contention is blatantly false, and Plaintiff's attempt to mislead and taint the Court fails. Plaintiff's document request 1 requested "all documents concerning Defendants' current, former or anticipated contractual, employment, distributorship, or other business agreements or arrangements with D&W." Further, document request 2 requested "all documents concerning any monetary payment, compensation, gifts or anything or value made, provided or promised by D&W to Defendants." In its motion, Plaintiff concludes that Defendants falsely stated that they could not produce the compensation agreement because they did not have a copy and D&W refused to provide it them upon request. Defendants statement was honest and accurate. As stated in Defendants' opposition to Plaintiff's motion to compel Defendant Ihm's production of documents, Defendants stated that 1) they had conducted a reasonable and diligent search for documents responsive to Plaintiff's requests, but did not have the documents in their possession, and 2) that Defendants had repeatedly requested that D&W provide the D&W Confidential Policy and any related documents including the Compensation Agreement to Defendants, but D&W's counsel refused to provide the documents. See Becker Decl. ¶ 1-2. This was a completely accurate

statement. The fact that Defendant Ihm may have had a copy at one time or drafts of such documents at one time is not conclusive evidence that he retained such documents and refused to produce them. The fact is he did conduct a reasonable and diligent search for such documents but was unable to locate them. Moreover, as stated above, Defendant Ihm does not work in a typical office, he operates out of a warehouse and spends the majority of time on the road. As a result, Defendant Ihm does not have a precise memory as to much of the office paperwork that was exchanged, including emails. See Ihm Decl. However, such facts do not lead to the conclusion that Defendant Ihm intentionally withheld documents in his possession. This is simply not true.

**2. <u>Document Request 3, 4, 5 and 6.</u>**

Plaintiff also lumps these requests together in a confusing and disorganized manner. Plaintiff's document request 3 requests "all documents concerning Defendants' meetings or communications with D&W between August 1, 2008 and August 1, 2011, inclusive." Further, document request 4 requests "all documents concerning the termination of Defendants' distribution arrangement with Brunckhorst." Document request 5 requests "all documents concerning Defendants' communications with D&W concerning: Brunckhorst, Boar's Head, Boar's Head Products, current or former distributors of Boar's Head Products, or current or former retailers of Boar's Head Products." Finally, document request 6 requests "all documents concerning Defendants' communications with current or former distributors of Boar's Head Products, which communications occurred on or after April 1, 2011." The Plaintiff once again concludes that Defendants intentionally withheld documents they must have had in their possession. This is simply not the case. The fact that D&W maintained and was able to locate various documents does not mean that Defendants were able to. In fact, Defendants produced documents that D&W did not and vice versa. Plaintiff conveniently buries in its brief the fact that from the period of the May 2012 to October 2012, Defendants produced one hundred and eighty five (185) pages of additional document production including thirty six (36) pages of emails as well as numerous corporate and financial documents. See Becker Decl. ¶ 5.

Defendants have always acted diligently and honestly in their production. At no time have Defendants ever intentionally withheld documents in their possession. Plaintiff's misconstrued assertions are simply false.

**C. <u>Defendant Ihm Provided Truthful Testimony At His Deposition.</u>**

The Plaintiff egregiously misstates and misconstrues Defendant Ihm's deposition testimony, while intentionally omitting Plaintiff's extreme bullying tactics by counsel. In fact, throughout Defendant Ihm's deposition, Plaintiff's counsel routinely yelled, screamed and bullied Defendant Ihm in an attempt to rile him up and elicit emotional responses. One such example as outlined in the Kirby Declaration, paragraph 101, which states:

Q: In March 2011, Mr. Nardi Contacted you again?
A: I don't remember, I don't recall.
Q. You don't remember? You swore to it Mr. Ihm.
A: [Objection by counsel for Defendant Ihm].
WITNESS: I swore it. I swore it. I don't care.

What Plaintiff intentionally omits is the fact that this interaction occurred after hours of badgering by Mr. Hyman and that Defendant Ihm's counsel immediately objected stating "[Y]ou have to ask questions. You can't keep arguing Mr. Hyman. Ask a question and he'll answer it." See Becker Decl. ¶ 6.

Another example which occurred after the same type of interrogation by Mr. Hyman, wherein counsel elicits Defendant Ihm into stating that [H]e "doesn't like to read documents," including documents "under oath." This is another attempt by Plaintiff's counsel to create a dark cloud over Defendant Ihm through the use of bullying tactics.

Finally, Plaintiff's counsel takes Defendant Ihm's testimony out of context numerous times in its motion in an attempt to make Defendant Ihm appear to be non-truthful. One example involves questioning regarding whether Defendant Ihm ever reviewed the compensation agreement with an attorney. Defendant Ihm stated that he had not and Plaintiff's counsel attempts to contradict Defendant Ihm's testimony by stating that documents Plaintiff received

from D&W show that Defendant Ihm had showed the compensation agreement to his sister-in-law who is an attorney. See Plaintiff's P&A, page 16, lines 2-5. However, Plaintiff intentionally misconstrues the connection. Defendant Ihm's sister-in-law is a patent attorney in Washington DC, and Defendant Ihm did not want her involved. See Ihm Decl. ¶ 5. The fact is that D&W may have forwarded the document to Defendant Ihm's sister-in-law, but any communications that she may have had were directly with D&W, and were brief. See Ihm Decl. ¶ 5. In fact, D&W had a difficult time communicating with her and none of her suggestions were incorporated in the document. See Ihm Decl. ¶ 5. This is just another example of Plaintiff's twisting of the facts in an attempt to tarnish Defendant Ihm's credibility.

Moreover, during the two years preceding the present dispute between the Parties, Defendant Ihm was working approximately eighteen (18) hours per, day seven (7) days a week. See Ihm Decl. ¶ 4. Defendants record keeping may not have been up to par, as being on the road and servicing customers has always been their main priority. See Ihm Decl. ¶ 4. As a result, Defendant Ihm does not have a precise memory as to much of the office paperwork that was exchanged, including emails. See Ihm Decl. ¶ 4. The fact that one does not recall something does not mean he or she is testifying falsely. Moreover, Defendant Ihm has never intentionally withheld information or documents in his possession. In fact, no material omissions have ever taken place on the part of Defendants. Plaintiff's claims are form over substance. It is quite clear that Plaintiff is attempting to exploit Defendants position in an attempt to push the Court to rule on this case without a trial on the merits.

## IV. LEGAL ARGUMENT

### A. Legal Standard For Sanctions.

Pursuant to Federal Rule of Civil Procedure Rule 37, a district court is authorized to strike pleadings, dismiss an action, and render a default judgment against a party if a party fails to comply with a court order to provide or permit discovery. Fed. Rule Civ. Proc. § 37(b)(2). However, imposing the sanction of dismissal is extremely harsh and drastic. A default judgment sanction "is a *harsh* penalty imposed only in *extreme* circumstances." *Hester v. Vision Airlines,*

*Inc.,* 687 F.3d 1162, 1169 (9th Cir. 2012) (emphasis added) citing *Dreith v. Nu Image, Inc.,* 648 F.3d 779, 788 (9th Cir. 2011). Dismissal of an answer is generally *inappropriate* where a defendant has not been warned about *that particular sanction*. *Computer Task Group, Inc. v. Brotby,* 364 F.3d 1112, 1116 (9th Cir. 2004) (emphasis added). Indeed, the Ninth Circuit has held that, in order to have "adequately considered less drastic sanctions," a District Court should (1) "explicitly discuss the alternative of lesser sanctions and explain why it would be inappropriate"; (2) "implement lesser sanctions before ordering the case dismissed"; and (3) "warn the offending party of the possibility of dismissal." *Id.* See also *Ehrenhaus v. Reynolds,* 965 F.2d 916, 920 (10th Cir. 1992) (observing that, as in the Ninth Circuit, a warning about dismissal is ordinarily a prerequisite to dismissal). "Because dismissal with prejudice defeats altogether a litigant's right to access to the courts, it should be used as a weapon of last, rather than first, resort." *Id.* quoting *Meade v. Grubbs,* 841 F.2d 1512, 1520 (10th Cir. 1988). The district court must consider "less severe alternatives" than outright dismissal. *United States ex rel. Wiltec Guam, Inc. v. Kahaluu Constr. Co.,* 857 F.2d 600, 604 (9th Cir. 1988); *Leon v. IDX Sys. Corp.,* 464 F.3d 951, 958 (9th Cir. Wash. 2006). "Dismissal is a severe sanction, which "is authorized only in 'extreme circumstances' and only when the violation is 'due to willfulness, bad faith, or fault of the party.'" *Gemisys Corp. v. Phoenix American, Inc.,* 186 F.R.D. 551, 556 (N.D. Cal. 1999) quoting *In re Exxon Valdez,* 102 F.3d 429, 432 (9th Cir. 1996). See also *Henry v. Gill Indus.,* 983 F.2d 943, 946 (9th Cir. 1993) (holding that, in the absence of willfulness, bad faith, or fault, a District Judge lacks even the discretion to dismiss an answer).

Before a default judgment can be entered against a defendant, the Court must consider the following five factors, (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. *Stars' Desert Inn Hotel & Country Club v. Hwang,* 105 F.3d 521, 525 (9th Cir. 1996); *Wanderer v. Johnston,* 910 F.2d 652, 656 (9th Cir. 1990); *Sorokin v. Sheriff's Dept.,* 2011 U.S. Dist. Lexis 37293 (S.D. Cal. 2011).

As set forth in detail below, the Court should refuse to impose the extremely harsh sanction of striking Defendants' answer or entering default against Defendants because Plaintiff has failed to show that Defendants have engaged in *any* acts supporting such drastic measures.

**B. The Court Should Refuse To Impose The Harsh and Extreme Sanctions of Striking Defendants' Answer and Entering Default Judgment Because The Factors Weigh Heavily In Favor of Defendants.**

There can be no doubt that this in not a case contemplated by the Ninth Circuit to impose the harshest sanction of striking the answer and entering default judgment. Indeed, the Plaintiff has failed to show even the slightest evidence that Defendants have engaged in any willful or bad faith conduct. The fact is that the Defendants have always acted diligently and honestly in their dealings with Plaintiff throughout the discovery process and the entire case, despite Plaintiff's bullying tactics. Further, the Court has never issued a warning that a case dispositive sanction would result in any of it's Orders. Plaintiff clearly knows this but is attempting to exploit and expand the rulings in the Ninth Circuit to fit its altered mold. As set forth below, Plaintiff's attempt fails.

**1. The Public's Interest In Expeditious Resolution of Litigation and The Court's Need To Manage Its Dockets.**

The public's interest in an expeditious resolution of the present case and the Court's docket has not been affected by any of Defendants alleged acts. To the contrary, any delay and congestion of the Court's docket in the present matter has resulted directly from Plaintiff's unrelenting determination to discover the *confidential, proprietary, and trade secret* information of D&W. In fact, Plaintiff's primary motivation in bringing this case was to obtain such information. Further, Plaintiff can continue to jump up and down and stomp its feet but it cannot magically make documents appear in Defendant Ihm's possession that simply are not there. Finally, Plaintiff could have easily subpoenaed documents from D&W at the inception of the lawsuit, from the source of the information, instead of Defendants, who did not have the majority of such documents. Defendants counsel told Plaintiff at the inception of the lawsuit to subpoena

documents directly from D&W but Plaintiff chose to wait fourteen (14) months to do so. See Becker Decl. ¶ 4.

**2. <u>Plaintiff Has Not Suffered Any Prejudice Supporting This Drastic Sanction.</u>**

The Plaintiff has not suffered any prejudice supporting this drastic sanction[1]. In its motion, Plaintiff alleges that it has suffered prejudice from being "forced" to subpoena and depose D&W employees to obtain documents and to depose Defendants without "a substantial volume of documents." However, Plaintiff has failed to show these acts were the result of any willfulness or bad faith on the part of Defendants. *Gemisys Corp.* at 432. As stated above, Defendants never willfully withheld documents in its possession, they simply did not have a lot of them, certainly not the amount that a major business entity like D&W did, with corporate offices and office staff. Courts in the Ninth Circuit are not inclined to impose such a harsh sanction without blatant willfulness. In *Sorokin v. Sheriff's Dept.,* 2011 U.S. Dist. Lexis 37293 (S.D. Cal. 2011), the Court *refused* to grant the sanction of dismissal despite holding that the plaintiffs "repeatedly, knowingly, and intentionally violated their discovery obligations and various court orders" by failing to appear for their depositions and failing to respond to any written discovery. Moreover, the parties failed to appear at the court ordered sanction hearing. The Court held that "both the prejudice and availability of lesser sanctions weigh against dismissal," and that "while Defendants have suffered harm from Plaintiffs' repeated discovery violations... and while Plaintiffs have intentionally violated a Court order, the Court has not conclusively determined that lessor sanctions will not be successful..." *Sorokin v. Sheriff's Dept.,* 2011 U.S. Dist. Lexis 37293, *11, 12 (S.D. Cal. 2011).[2]

Similarly, in *Gemisys Corp. v. Phoenix American, Inc.,* 186 F.R.D. 551 (N.D. Cal. 1999),

---

[1] In its motion, Plaintiff reverses the order of factors 3 and 4 of *Stars' Desert Inn Hotel & Country Club* but Defendants respond to them in the order listed as cited.

[2] In its Order, the Court further warned that if the Plaintiffs did not pay the approximately $1,200 in Court ordered sanctions, appear for their depositions and respond to the written discovery requests, they could suffer the sanction of dismissal. The Plaintiffs failed once again to comply with the Court's Order and the case was later dismissed.

the Court refused to enter the sanction of dismissal where the Plaintiff 1) intentionally fabricated evidence; 2) misrepresenting key witness declarations; 3) misidentified trade secrets; 4) failed to comply with initial disclosures and 5) failed to provide full disclosure. Despite plaintiff's behavior, the Court held that "any misconduct by [plaintiff] does not rise to the level warranting dismissal under Rule 37." *Gemisys Corp. v. Phoenix American, Inc.,* 186 F.R.D. 551, 557 (N.D. Cal. 1999).

Moreover, there has been no "misconduct" as that in Plaintiff's cited case *Anheuser Busch v. Natural Beverage Distributors,* 59 F.3d 337 (9th Cir. 1995). In fact, *Anheuser Busch* is not applicable to the facts presented here. In *Anheuser Busch*, during the course of the litigation, the plaintiff had violated numerous discovery orders issued by the court, and continued to engage in deceitful conduct with the court even after: "the district court sternly warned [plaintiff] that serious consequences would flow from deceiving it." *Id.* at 341. Thereafter, the court concluded that for three years plaintiff had deliberately lied and concealed from the defendant and the court the existence of substantial financial documentation that plaintiff presently advised the court had been destroyed. *Id.* at 343. These *extreme* facts are highly distinguishable from the present case and Plaintiff's attempt to create a parallel to the present case is just an attempt to mislead the Court. The Court should refuse to impose the harsh sanction of striking the answer and entering default judgment because the Plaintiff has failed to show that the Defendants have engaged in acts warranting such an extreme sanction.

**3. <u>Public Policy Favors The Disposition of This Case On Its Merits.</u>**

In its motion, the Plaintiff's argument that Defendants have engaged in acts preventing the case from being heard on its merits is simply false. In fact, by filing the present motion, it is Plaintiff, not Defendants, that attempt to dissolve of the present case without a trial at all, let alone a trial on the merits. In support of its argument, Plaintiff relies on a lot of "ifs" with regard to documents presently in its possession. Plaintiff states that if it had not received certain documents from D&W they would have never "obtained key documents" or "learned material facts." See Plaintiff's P&A, page 19, line 19. The argument that the case cannot be tried on its

merits because things may have been different if Plaintiff did not receive the documents and information from another source is circular. The fact is Defendants did not have certain documents or information and Plaintiff obtained it elsewhere. Plaintiff cannot now say that the case cannot be tried on the merits, they have the information now. The plaintiff's reliance on *Hester v. Vision Airlines, Inc.,* 687 F.3d 1162 (9th Cir. 2012) is misplaced as this case is highly distinguishable from the present case. In *Hester*, the defendant repeatedly violated the court's discovery orders by delaying and misrepresenting past and current production of documents to the Court and to class members and acted in bad faith. Defendant was further warned on the record on several occasions that it would receive a *case dispositive sanction* if it did not comply. *Id*. The Defendants never received such warning as set forth in more detail below in point C.

Moreover, in an attempt to twist the facts and manipulate the Court, the Plaintiff concludes that certain documents and information are pivotal to its case. However, Plaintiff has failed to show why because the fact is that the documents and information Plaintiff sought are not material to the claims it brought against Defendants. None of the substantive claims made in the complaint are implicated by the "new" emails and documents and no document proves and supports a claim that Defendant Ihm was required to provide more notice than he did, whether Defendant Ihm engaged in unfair trade practices around the time of the switch over, and whether Plaintiff suffered any damages. It is simply information pertaining to its main competitor and that is why Plaintiff sought it.

In *Kopitar v. Nationwide Mutual Ins. Co.,* 266 FRD 193 (E.D. Cal. 2010), the Court refused to enter the sanction of dismissal where the plaintiff was accused of destroying mold evidence because defendant's prejudice was too speculative. "A defendant suffers prejudice if the plaintiff's actions impair the defendant's ability to go to trial or threatened to interfere with the rightful decision of the case." *Kopitar v. Nationwide Mutual Ins. Co.,* 266 FRD 493, 499 (E.D. Cal. 2010). Similarly, in the present case, any alleged interference with the decision of the case is too speculative to warrant such dire sanctions.

///

**4. <u>The Court Should Refuse To Impose Such Drastic Sanctions Against Defendants Because Defendants Have Never Been Warned That Such A Drastic Sanction Could Be Entered.</u>**

As stated above, the Ninth Circuit has held that, in order to have "adequately considered less drastic sanctions," a District Court should "implement lesser sanctions before ordering the case dismissed"; and "warn the offending party of the possibility of dismissal." *Computer Task Group,* at 1116. See also *Ehrenhaus,* at 920 (observing that, as in the Ninth Circuit, a warning about dismissal is ordinarily a prerequisite to dismissal). The district court must consider "less severe alternatives" than outright dismissal. *United States ex rel. Wiltec Guam,* at 604. In the present case, the Court has never warned the parties about the possibility of dismissal and default.

In its motion, the Plaintiff intentionally misconstrues and misstates the Court's previous Court orders regarding warnings of the possibility of future sanctions. In paragraph 29 of the Kirby Declaration, the Plaintiff contends that on April 18, 2012 the Court previously warned the parties that sanctions would be awarded if a future motion regarding discovery was necessary. However, Plaintiff misinterprets the Court's Order. In her Order, Judge Stormes' cautioning was with regards to monetary sanctions as the Court did not warn of the threat of the sanction of dismissal or default judgment. Further, the Court's warning was primarily due to the fact that Plaintiff's counsel brought the motion without conducting a proper "meet and confer" as required by the local rules. No other Court Orders mention any type of sanctions in this regard.

All of the legal authority cited by Plaintiff where the sanction of dismissal or default judgment was entered involved egregious conduct and prior warnings by the Court as to the possibility of such sanctions, all of which is inapposite here.

The Plaintiff's reliance upon *Stars' Desert Inn Hotel & Country Club v. Hwang* and *Combs v. Rockwell,* are misplaced here. In *Hwang*, the defendant failed to appear at his deposition three times despite two Court orders demanding he appear, failed to pay previously ordered monetary sanctions and was previously warned that if he did not comply that his case

could be dismissed by default judgment. Despite all the warnings received, the defendant failed to comply with the Court's orders and the case was ultimately dismissed because the Court held the defendant had acted in bad faith. *Stars' Desert Inn Hotel & Country Club v. Hwang,* 105 F.3d 521, 525 (9th Cir. 1997). Similarly, in *Combs v. Rockwell,* 927 F.2d 486 (9th Cir. 1991), dismissal was warranted where counsel made thirty six changes to a party's deposition testimony, including materially altering his answers, after which the party signed the revised version under penalty of perjury, despite the fact that he had neither seen the original nor revised transcript. The facts and circumstances of *Wm. T. Thompson Co. v. General Nutrition Corporation,* 593 F.Supp. 1443 (C.D. Cal. 1984) are clearly distinguishable from the facts presented here. In *Wm. T. Thompson*, GNC had violated numerous discovery court orders and failed to comply with numerous formal discovery requests. The court determined that GNC had deliberately destroyed records which it had specifically been ordered to preserve. *Id.* at *9.

Similarly, in *Brockton Sav. Bank v. Peat,* 771 F.2d (1st Cir. 1985), the Court entered dismissal where the defendant refused to appear at numerous motion for sanctions hearings, and where defendant informed the Court it *chose not to obey* the court orders demanding appearance. *Id.* at 9.

Further, the present case is highly distinguishable from *Computer Task Group,* 364 F.3d 1112 (9th Cir. 2004), where the Court ultimately entered dismissal and default judgment where the defendant engaged in the intentional practice of obstructing justice by filing frivolous motions, withholding information, failing to pay two previously imposed monetary sanctions, produced fabricated documents and ignored five previous orders to comply. Further, the defendant lost eight motions to compel brought by plaintiff, and had been on notice that continued failure to cooperate in discovery would result in terminating sanctions.

In *Sun World, Inc. v. Olivarria,* 144 FRD 384 (E.D. Cal. 1992), the Court issued terminating sanctions where the defendant 1) willfully forged an exhibit to his counterclaim which would have directed the outcome of the case; 2) failed to appear at scheduled depositions or to provide timely responses to interrogatories; 3) received three warnings by the court that the

sanction of dismissal and default judgment would be imposed; 4) admitted to committing fraud on the court; and 5) perjured himself two times. *Id.* at 390.

Finally, in *Televideo Systems, Inc. v. Heidenthal,* 826 F.2d 915 (9th Cir. 1987), the Court entered terminating sanctions where the defendant admitted to lying in his depositions and admitted in Court on the day of trial that he gambled away a significant sum of money that was at issue in the plaintiff's claims for damages against him. *Id.* at 916. These cases are highly distinguishable from the present case.

Based upon the above, each of the five factors under *Hwang* weigh heavily in favor of Defendants. None of Defendants alleged acts are those contemplated by the Ninth Circuit to impose the extreme sanction of striking the answer and entering default judgment. As set forth above, the Plaintiff has failed to show even the slightest evidence that Defendants have engaged in any willful or bad faith conduct. The Defendants have always acted diligently and honestly throughout the discovery process and the entire case, while Plaintiff's have continued to engage in bullying tactics. Finally, the Court has never issued a warning that a case dispositive sanction would result in any of it's Orders. *Computer Task Group*. For these reasons, the Court should refuse to strike the Defendants' answer or enter default judgment.

**C. <u>The Court Should Refuse To Impose Monetary Sanctions Against Defendants.</u>**

The Court has the authority to issue monetary sanctions against either party pursuant to Fed. Rule Civil Proc. 37(b)(C). However, the Court should refuse to impose monetary sanctions against the Defendants. At all times relevant the Plaintiff has engaged in extreme bullying tactics on behalf of itself and its counsel. Defendants have been forced to endure this behavior at every avenue of the litigation. Notwithstanding this, while Defendant Ihm may not be the best record-keeper, Defendants have engaged in diligent and honest behavior. Many of the expenses Plaintiff has endured, have been due to its own lack of due care. Plaintiff could have avoided incurring the majority of the expenses by simply subpoenaing D&W early in the litigation.

///

## V. CONCLUSION

Based upon the above, the Court should refuse to strike the Defendants' answer or enter default judgment.

Dated: January 25, 2013

Respectfully submitted,
THE LAW OFFICE OF MATTHEW A. BECKER

By: /s/Matthew A. Becker/
Matthew A. Becker, Esq.
Attorneys for Defendants
Michael R. Ihm, Sunset Deli Provisions, Inc. and South Shore Deli Provisions, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on January 25, 2012, I electronically filed the Defendants' Points and Authorities in Opposition to Plaintiff's Motion to Strike Defendants' Answer and Enter Their Default and For Contempt and Costs and Attorneys' Fees, the Declaration of Michael Ihm in support thereof with Exhibits A-D, and the Declaration of Matthew A. Becker in support thereof, with the Clerk of the Court using the CM/ECF system which will send notification of such filings to all parties that have appeared in this matter.

Dated: January 25, 2013

Respectfully submitted,
THE LAW OFFICE OF MATTHEW A. BECKER

By: /s/Matthew A. Becker/
Matthew A. Becker, Esq.
Attorneys for Defendants
Michael R. Ihm, Sunset Deli Provisions, Inc. and
South Shore Deli Provisions, Inc.